[No. 9178.　Department Two.　March 24, 1911.]

BENJAMIN F. WAKEFIELD *et al.*, *Appellants*, v. E. H. FISH *et al.*, *Respondents.*[1]

EVIDENCE—DEEDS—FRAUD—SUFFICIENCY. The evidence to establish fraud in the insertion of an exception to a covenant against incumbrances must be clear and convincing, and is insufficient where disinterested witnesses who were parties to the transactions testified that it was fully understood and agreed to.

MORTGAGES—BONA FIDES—RECORD TITLE—NOTICE. A mortgagee is not charged with the mortgagor's notice of an outstanding equity in a third person, where there was nothing to show that he did not rely on the record title.

MORTGAGES—APPLICATION OF PROCEEDS — EQUITIES— SUPERIORITY. One having notice that a certain mortgage was to be made to raise money to satisfy his undisclosed equity in the property, cannot charge the mortgagee with the application of the proceeds where he failed to give the mortgagee direct notice of his claim thereto, even if the mortgagee had notice of the mortgagor's agreement to so apply the proceeds.

MORTGAGES—RECORD—PRIORITIES. A purchase money mortgage does not, under our recording acts, take priority over others unless they concur in time or the priorities are controlled by contract or equities between the several mortgagees.

MORTGAGES — FORECLOSURE — SUCCESSIVE FORECLOSURES — JUNIOR MORTGAGES. Where a first mortgage had been foreclosed, establishing the priorities and the amount of the respective debts, without making junior mortgagees parties to the suit, it is proper to dismiss a subsequent action to foreclose the junior mortgage; since the right of redemption secures all the rights they would have by their foreclosure.

Appeal from a judgment of the superior court for Stevens county, S. Douglas, Esq., judge *pro tempore*, entered June 27, 1910, dismissing an action for equitable relief, upon a challenge to the sufficiency of the evidence. Affirmed.

*R. L. Edmiston*, for appellants.

*Jackson & Bailey* and *E. D. Germain*, for respondents.

[1] Reported in 114 Pac. 180.

CHADWICK, J.—On September 1, 1908, appellants owned 160 acres of land in Spokane county, Washington. Desiring to dispose of this property, Mr. Wakefield went to Spokane and there came in contact with a Mr. Michener, a real estate agent, who at the time had nothing to offer that was attractive to Mr. Wakefield. After a day or two he was introduced to a Mr. Schmidt, who had some real property and a small stock of merchandise at Hayford. Mr. Schmidt did not care to trade his land for Wakefield's property, and Mr. Michener brought respondents E. H. Fish and his wife Grace into the deal. They owned certain town lots in the city of Spokane. It was then agreed that Fish and wife would take Wakefield's property, that Schmidt would take the lots in Spokane, and Wakefield would take the property and stock of goods at Hayford; and deeds were executed accordingly. In the adjustment of the trade, it was estimated that Schmidt had an equity of about $2,250 in his property. Upon further consideration it was agreed that this equity did not exceed $1,000, and to secure the difference it was agreed that E. H. Fish and his wife would make a deed, conveying the property he had just bought from Wakefield, to Schmidt; this deed to be held in escrow by Mr. Michener subject to a collateral agreement that Fish would pay $500 to Schmidt on January 1, 1909, and $500 on July 1, 1909, and in the event that such sums were not paid, the deed was to be delivered to Schmidt, and he should thenceforth be the owner of the property. Schmidt's rights in the property and his interest in the contract were assigned to the Wakefields on December 12, 1908, and they are now seeking to enforce their rights thereunder.

The assignment was recorded February 13, 1909. Neither one of the payments was made under this collateral agreement. On October 1, 1908, E. H. Fish and wife executed a mortgage on the Wakefield property in favor of Fred Fish, father of E. H. Fish, for $1,500, evidenced by two notes, one of date August 8, 1908, for $900, and the other of date October 1, 1908, for $600. This mortgage was foreclosed in April, and

the property bid in by Fred Fish for $1,689.82, which is conceded to be the amount due on the judgment. In July, E. H. Fish and wife being still in default, Mr. Wakefield, as assignee of the escrow agreement, demanded the deed from Mr. Michener, and having obtained it, filed it for record. An extension of the abstract of title disclosed the Fred Fish mortgage, its foreclosure, and the sale of the property; whereupon appellants brought this action, asking that the Fred Fish mortgage be held to be fraudulent as to them, that their escrow deed be decreed to be a mortgage and first in time, and for such other relief as they might, under a full disclosure of the facts, be entitled to.

As a premise to our conclusions of law, the following facts are pertinent: At the time the deed and escrow agreement were executed, it was understood that E. H. Fish and Grace Fish would undertake to get a loan on the property and pay off the $1,000 in the immediate future, and Mr. Michener and Mr. Schmidt undertook to and had made some arrangements for a loan, pending which E. H. Fish told them that it would be unnecessary for them to go further, as he had arranged to get a loan from his father at Colville. The parties had, however, with seeming intent to authorize the placing of a loan on the property to meet the debt due from E. H. Fish and wife to Schmidt, written into the mortgage (the escrow deed) that the premises "are free from all incumbrances except whatever incumbrance there may be by July 1, 1909." It is asserted by appellants that this clause was fraudulently inserted; that Fred Fish had notice of the escrow agreement in that E. H. Fish was his agent, and that he is thus charged with notice of the rights of Schmidt and his assignees, these appellants; and further that the court erred in refusing to determine the priorities between the liens of the parties, and in refusing to decree a foreclosure of the deed mortgage.

Mr. Michener, who prepared the papers, was the agent of all parties to the transaction, and a careful reading of the evidence convinces us that the testimony is wholly insufficient

to charge him or E. H. Fish with any fraudulent purpose or design in inserting the exception to the warranty clause. On the contrary, the evidence indicates that it was the understanding of all parties that a mortgage would be put upon the land. Schmidt and Michener had arranged for one, when they were halted by E. H. Fish as before stated. Upon this very point Mr. Schmidt, although disclaiming knowledge of the exception to the warranty clause, said:

"Mr. Fish and I had agreed on the escrow agreement and the deed was to go in escrow and he was to have the privilege of putting a mortgage on the property to get the money to pay up the escrow. That was my understanding of it."

Mr. Michener says that, after he had written the clause in the deed, he stated that it was unnecessary because Fish would have the right to make the mortgage in any event. But if it should be held otherwise, the testimony offered to vary an instrument so solemn as a deed must be clear and convincing, and the record here is wholly insufficient to overcome the presumption of integrity attending the instrument. This has been so frequently held that a collection of the cases would serve no purpose.

The testimony shows that an attorney asked for permission, and was allowed, to inspect the escrow agreement and deed while it was still in Michener's possession. Whether he was acting as the agent of Fred Fish or of E. H. Fish is not made clear. Upon the theory that such knowledge as he obtained from the escrow agreement would bind Fred Fish, appellants rely on *Dormitzer v. German Sav. & Loan Soc.*, 23 Wash. 132, 62 Pac. 862. It is said:

"If Fred Fish relied upon the statement of his son E. H. Fish with reference to the disputed clause, then E. H. Fish became his agent, and Fred Fish was charged with knowledge of all the rights of the parties possessed by E. H. Fish."

Without undertaking to analyze the case relied on, it is sufficient to say that this theory cannot be sustained. There is nothing even tending to show that Fred Fish had any knowl-

edge of the previous transactions of the parties, or that he did not rely upon the record title which was in E. H. Fish; or if it be held that he did have notice of the escrow agreement and the exception to the warranty clause in the escrow deed under the facts as we have disclosed them, he had a right even then to take the mortgage. For if the equities are to be measured, Schmidt, having notice of the fact that E. H. Fish was about to make a mortgage in favor of his father, might have given direct notice of his equities and his claim to the proceeds of the loan. Not having done so, he cannot charge Fred Fish with its wrongful application. From the whole record we are convinced that the mortgage was within the contemplation of all the parties, and there being no evidence showing any fraud, we hold that the trial judge was correct in his conclusion that the rights of the appellants were subordinate to those of Fred Fish.

This conclusion disposes of the question of priorities, and that will need no further discussion, unless heed is given to the assertion of appellants that their escrow agreement and deed was in fact a purchase money mortgage, and for that reason would take precedence over the mortgage of Fred Fish. To sustain this contention appellants rely upon *Bisbee v. Carey*, 17 Wash. 224, 49 Pac. 220, and *Skeel v. Christenson*, 17 Wash. 649, 50 Pac. 466. Under our recording acts the question of priority between one holding a purchase money mortgage and another cannot be raised, unless the mortgages concur in time or the priorities are controlled by some contract or equities arising between the several mortgagees. The doctrine, if admitted at all, would not apply as against one who, as we have held, had a right to take the mortgage although he had notice of the escrow agreement, and who had in addition the record title upon which he might rely.

Appellants' final contention is that, although their mortgage be held to be a second lien, the court erred in refusing a decree of foreclosure, asserting the familiar rule of law that

a junior mortgagee can maintain a foreclosure proceeding without redeeming or offering to redeem. This rule cannot be seriously questioned, but where, as in this case, the prior mortgage has been foreclosed, there can be no reason for the application of the rule. The foreclosure proceeding established the priority of the Fred Fish mortgage as against all parties except these appellants. The most they can claim is that they were not made parties to the suit, and thus have a right of redemption. This the lower court held that they might still exercise. Another foreclosure would be futile. The priorities between the parties have been established and the amount of their respective debts ascertained, and a redemption would secure to appellants all the rights they would have had had they been parties to the foreclosure proceeding. Affirmed.

DUNBAR, C. J., CROW, and MORRIS, JJ., concur.